Good morning and welcome to the Ninth Circuit. Judge Tallman and I would also like to welcome our colleague Judge Rakoff from the Southern District of New York who sat with us on a number of occasions so we welcome him back. It's a great pleasure to be here but what I've learned is the contrary to rumor it never rains in Seattle. He only comes during the appropriate time but it's also never 90 degrees in Seattle either. So for those of you who have not argued here before we have a clock and when it turns yellow well then your time is running to the end including your rebuttal time. So the first case for argument this morning and we do have Mr. George from Department of Justice on you may proceed. Good morning. It may please the court. My name is Phillip Tory and I represent the petitioner in this matter, Ms. Mompremier. I would like to reserve three minutes for rebuttal and I'll watch the clock. This case involves a lawful permanent resident of nearly 20 years who fears being deported back to Haiti because of her identity as a transgender HIV positive woman. She was ordered deported and denied all forms of immigration protection based on an inconclusive record of conviction and a faulty appeals process. I would like to address two matters before the court this morning. First, cap protection and second, the inconclusive record of conviction. First, the easiest way for this court to deal with this case if it disagrees with us on removal is to remand for a decision on the petitioner's cap claim. The only issue that was ever properly before the Board of Immigration Appeals and consequently this court, is the issue of removability. There were simply no cap findings properly before the Board of Immigration Appeals or this court. The IJ's initial oral decision from September of 2020 to finding the petitioner removable and denying her all forms of immigration protection was vacated in full later that same day, sua sponte, before any appeal was lawfully lodged with the Board of Immigration Appeals. May I ask you about the procedural aspect of this and I'll also inquire of the United States. So the order is vacated and I guess your argument is that how can you affirm an order that doesn't exist, correct? That's correct, Your Honor. Would it be procedurally proper for the BIA to basically sort of sua sponte, revive the order and then rule on it? No, Your Honor, for two reasons. One is the BIA jurisdictionally can only review an immigration judge decision and here there was no judge, immigration judge decision on the cap claim before the board. The second point is if the BIA were to rule on the cap decision, it is effectively making its own findings, something precluded by the BIA's authority under regulations and under this court's jurisprudence under Fatigue and Rador. So the IJ's decision was vacated in whole and it was that decision, excuse me, the Justice Department then filed an emergency motion to reconsider which was accepted but the immigration judge doubled down on his decision to keep the initial order vacated and the proceedings terminated. It was that decision that was appealed to the Board of Immigration Appeals. Thank you. So moving now to my second point. So if we remand to the board then it should in turn remand back to the immigration judge, correct? That's correct, Your Honor. For entry of the final decision. That's correct, Your Honor. Second, and as a threshold matter, the record of conviction put forth by the government in this case to meet its burden of demonstrating removability by clear, unequivocal, and convincing evidence, put simply, is a mess. Based on the documents submitted by the government, the petitioner could have been guilty of any one of Nevada-related battery offenses. And even if it is one of the two Nevada battery offenses listed under 241.2e, nothing in the record of conviction demonstrates which of those two offenses the petitioner has been found guilty of. Was this, remind me, was this the case where your client was armed with a knife and there was a cutting of the victim? That's correct, Your Honor. Yes. And why wouldn't that be a crime of violence? So it would not be a crime of violence under the jurisprudence of this jurisdiction because under Nevada law, committing a battery can be done so with the least touching offensive touching, which does not meet the Johnson standard. So your position is it's not a categorical match so we don't get to look at the underlying facts? That's correct, Your Honor, absolutely. So arguably the most important document in this case submitted by the government for the record of conviction is the judgment of conviction. The judgment of conviction, as we noted in our brief, contains at least two errors in it and that in two different points it cites to a category C felony for battery of the dangerous weapon. Battery of the dangerous weapon under Nevada law... Why isn't that just an ordinary typo? Or as I think it was described in your adversary's brief, a scrivener's error. All the rest of it is consistent with a category B, not a category C. Two responses to your point, Your Honor. First, citing no authority whatsoever, the government asks the court to to not consider it as a typo, as Your Honor is pointing out here. However, the government has to meet a very high standard when submitting documentary evidence to remove a lawful permanent resident. And in fact, under the Decision Parade of E. Wilkinson under the Supreme Court's jurisprudence, that standard is quite high and in fact can not be, in certain cases, conclude a material typo, such as this record here. Counsel, if we were to conclude it is a scrivener's error, would you concede that under subsection E, if the battery is committed with the use of a deadly weapon, that would be a crime of violence under Ninth Circuit authority? Well, I would not concede that under subsection E, it would be a crime of violence under Ninth Circuit jurisprudence. Right. That's our decision in Gweezer-Rodriguez. In Gweezer-Rodriguez, this court specifically held that subsection 1 of 2E, there are two subsections to 2E. Well, it's actually 2E, right? And we said it categorically qualifies as a crime of violence. The conviction at issue in the Gweezer-Rodriguez case, however, was subsection 1. So discussion of subsection 2E as a whole would be dicta in that decision. Okay. Explicit, however. Fair enough, Your Honor. It's a difficult argument for us to make. However, we do believe that the Gweezer-Rodriguez case was wrongly decided. However, this court can distinguish it based on Your Honor's point in that here, we don't know from the record of conviction whether we're dealing with subsection 1 or subsection 2 of 2E. So just as the Supreme Court held in the Pareto case, and this court held in Shalhoub-Higueroa, we believe that the court should grant the petition for review and keep the court to do just that. And then the alternative, at a minimum, if the court disagrees with us on the removal issue, to remand back to the Agency for Factual Findings on cap. And with that, I'd like to reserve the balance of my time, if I may. You may. Thank you. Thank you, Your Honors. Mr. George. May it please the Court, Matthew George for the Attorney General. The record here supports petitioner's removability by clear and convincing evidence. The first issue is what is the actual statute of conviction? That is a factual question, as the Supreme Court pointed out in Pareto. And here, the Agency resolved that by saying that the 241-2E is the statute of conviction. The operative language there is the use of a deadly weapon. That applies to both subsections of that statute. And the court has held in Huizar-Rodriguez that that language makes it a crime of violence. The use of a deadly weapon, even if it is a de minimis touching, the use of a deadly weapon is categorically a crime of violence. Because that language applies to both subsections of 1 and 2, the entire portion of that statute, all of 2E, is categorically a crime of violence. And even if we were to say the scrivener's error in the judgment in this case, the B versus the C issue, which the immigration judge did explicitly find was a scrivener's error, the immigration judge did resolve the factual dispute and make that finding that it was a scrivener error. And simply because there is some sort of conflicting evidence doesn't mean that the evidence isn't clear and convincing. Or simply because there is some evidence in the opposite direction doesn't mean that burden cannot be met. The obligation is not to present all evidence on one side and there's no conflicts. For example, even in a criminal trial, the standard is not 100% guilt, 100% of certainty. It's simply beyond a reasonable doubt. So a fact finder, a jury, for example, could have some doubt, as long as it's not reasonable, and could still enter a conviction. The same principle applies here. And we have a lower standard of clear and convincing evidence, simply because there is conflicting evidence, which the fact finder has already resolved as a scrivener's error, doesn't mean that it's not clear and convincing. Can I ask you about a different issue, one that wasn't referred to in oral argument by your adversary, but it is in his brief, which is that the BIA determined that the battery conviction was a aggravated felony. How can that be when that is defined in the statute and the rules as a sentence of at least five years? Oh, is your honoree referring to a particular serious crime? Yes. That's what would require a five year sentence. Is that the issue your honoree is referring to? Yes, yes. Okay. Well, as we said in our brief, it is a crime of violence, aggravated felony. The two elements for a particular serious crime, per se, are an aggravated felony, and then at least a five year sentence. Yeah, so how do you satisfy the at least? I don't think there is any dispute that the sentence here was 24 to 60 months. Yeah, so that's at most, at most it was five years, not at least. Well, as we argued in our brief, the court has held in an unpublished decision that that precise sentence of 24 to 60 months in a bodice sentence means that it's a sentence for the maximum amount with the opportunity for parole after the minimum amount. And so I don't understand how you square that with the everyday English meaning of the words at least. You're saying that the sentence is at most five years, not that it's at least five years. It's at least, and it clearly wasn't at least five years here, is considerably less, either both on its face and in the actual sentence. Right. I understand the point your honor is making, but the court has held in Ramos-Mendoza that that exact sentence was at least five years. Five years under Nevada law. Why is it a matter of, yeah, I understand that, although I think that case may be distinguishable, but why is it a matter of Nevada law? This is a federal rule. Because if the words are plain and unambiguous, why do we reach Nevada law at all? Well, there's two different things. We're looking at what was the actual sentence imposed, and then does that meet the federal definition? And I believe there are in other contexts where, for example, the INA says that for at least one year, sentences of exactly one year meet that definition. I don't have those cases in front of me, but I believe they do exist. I think that's how the court has interpreted in other parts of the Immigration and Nationality Act. Counselor, are you saying that Nevada essentially imposed an indeterminate sentence, which in other states means if it's two to five years, the sentence is five years, but the defendant is eligible for parole after serving two? Is that what you're saying? Yes, I'm saying exactly what the court has said in Ramos-Mendoza. I'm not, I'm just repeating what the court has held in that case. Would you understand, do you understand, Counselor, do you understand what an indeterminate sentence is? Yes, I do. Okay, and is the definition I gave you the correct definition of an indeterminate sentence? Could you repeat it, Your Honor? I want to make sure I'm understanding it. Yes, in states that impose indeterminate sentences from two to five years, what it means is the sentence is five years, but the defendant is eligible for consideration of release on parole after serving two. I believe that, yeah, that's exactly what the court said in Ramos-Mendoza, yes. So your argument is that Nevada basically imposed an indeterminate sentence? Under the court's decision in Ramos-Mendoza, Nevada imposed a five-year sentence, but the opportunity for parole after two years. Okay. That's not me making this up, that's what the court has held in Ramos-Mendoza. And the court there looked at Nevada law and analyzed what Nevada meant by this 24-to-60-month sentence, because it was a 24-to-60-month sentence in that case. And the court held there that that was a per se particularly serious crime because that was a five-year sentence. And so this is not me making something up, this is just me repeating what the court has already held. And I understand maybe in a different state that would work a different way, but this is what the court is telling us in its decision in Ramos-Mendoza. What that means under Nevada law. That's an unreported decision, correct? It is, yes. So I don't think the court's probably telling us anything given that that has no precedential value. So basically we're back at ground zero here trying to figure out if you have an indeterminate sentence and you can get imprisoned for less than five years, does that meet the federal requirement? So let's assume there is no Ramos-Mendoza, which is not a big assumption because it's not a precedential case. Where do you go from there? Well, as Judge Holman has just said, if it's a sentence for five years with the opportunity for parole after two, well, the sentence was for five years. And the lower end just determines when that individual is parole eligible. But the person may or may not get parole and may end up serving the entire time. And so we look to the maximum amount of the sentence. But is the person here sentenced to five years or is the person sentenced from 24 months to five years? The sentence imposed was 24 to 60 months. Okay. So the sentence was not at least five years by plain reading, was it? The way the court has interpreted similar language, that at least means if it gets to exactly five years, that is at least five years. Yeah, I just, I'm still having trouble how you square that with Webster's give any sensible meaning to the words at least. Well, is 365 days at least one year? It's clear that even if we adopt your indeterminate sentence parole version of this, it's clear that what the court is imposing is a term of imprisonment that can be considerably less than five years. And therefore, how is it at least five years? Because the sentence is for five years with an opportunity for parole after two. Yeah, but that's just, first of all, that assumes that this is a matter of state law, not federal law, but even assuming that for the sake of argument. Uh, so, uh, if, if the, uh, court imposes a sentence of one month to five years, uh, but couches it as a five year sentence subject to being reduced to, uh, as little as one month imprisonment, you think that still meets the statute? No, that has a different language. Your honor. That's different than in this case, that would not be the same analysis. Why? The opportunity for reducing it down to one year, that that's different than being the opportunity for parole after two years, a sentence for the maximum with an opportunity for parole at a certain point is different than a reduction in sentence. So I guess this turns on what, what's the meaning of aggregate term of imprisonment. Isn't that what we're wrestling with here? Oh, well, I think judge Rakoff is wrestling with the, at least, so I'm not sure, but no, I, I think aggregate is important too. Yeah. It's the same. It's really the same question. Your position, as I understand your argument is the aggregate is five years. If aggregate means maximum. Yes. Okay. And so as long as the court imposes at least five years, then in, in aggregate, it meets the definition of that prong of the particularly serious crime designation. Yes. Okay. Yes. Yes. And the best authority, the best authority you have for that is our unpublished panel decision in Ramos Mendoza. Yes. I mean, that, that case is directly on point. It's, it's a Nevada case with the same 24 to 60 month sentence, and also about particularly serious crime. I understand it's unpublished, but it's, it's very persuasive because it is the, it's on all fours with this, this issue in this case. Oh, is that case also rely on spillers? I'm sorry. Well, I rely on spillers. Rely on spillers. Is that the Nevada case? Yes. I, I believe it analyzed the Nevada law. I can't, I don't remember offhand which cases it looked at. There's some question about whether spillers really has any traction given what the Nevada sentencing scheme is now, even if we were to look at Nevada law, which is a question given that we have a federal definition here.  The Nevada law said that we are now giving judges the option, subsequent to spillers, of imposing a minimum max slash maximum sentence as opposed to a parole eligible sentence. And supposing this was a minimum maximum sentence, do you still think it fits the at least five years aggregate requirement? I guess I don't understand exactly what you mean by the minimum maximum sentence. I want to make sure I'm understanding. Well, I'm reading from, I'm reading from Williams versus State Department of 17 after some sentencing legislation that, that followed spillers. And that says, quote, offenders in Nevada receive either a minimum maximum sentence, comma, a parole eligibility sentence, comma, or a determinant sentence. So they're, they're making a distinction between a parole eligibility sentence and a minimum maximum sentence. So which was this? That, I'm not, I'm not sure, Your Honor. I haven't looked at the exact language in the, the sentencing portion of it to be able to answer that precisely. I, I was not as prepared for this particular issue. Fair enough. Assuming for the sake of argument that this is a minimum maximum sentence rather than a determinant sentence subject to parole, would you still claim that it meets the aggregate at least five years requirement? I, I, I don't think I can answer that. I'm not sure. That would, I would have to do some more research and certainly I would defer to whatever position the Board of Immigration Appeals, how they would analyze it. But would they, would we be deferring to them on Nevada law? Assuming, even assuming Nevada law were the construct here? Right. It would seem to me. Oh no, the court, no. No. So we can kind of leave the BIA, we can leave the BIA out of it just for simplicity and because that's the way it works that we're here to interpret this federal statute, albeit a sentence under Nevada law, correct? Yes, Your Honor. Okay. So I guess it concerns me since this is the position of the government and the government relies on a non-precedential decision of the Ninth Circuit, what may in fact have misread Nevada law in this era, because Belain is not really analogous here, now we're into the timing of this conviction. Your position as I take it is simply because the number five was in there. That it meets the at least five. Is that correct? Yes, because it was a maximum of 60 month sentence. Yes. Thank you. Yes. Thank you. Thank you. You have some rebuttal time left. Your Honor, if I could make one quick point on the sentence issue here as it If the court agrees with us that at a minimum it should remand back to the agency for factual findings on the CAC claim, it should also do so for withholding of removal. The five-year sentence here, in fact, was never served. She served a two-year sentence. But that's not the issue that we're wrestling with. The question is what's the meaning of aggregate term of imprisonment when the sentence is two to five? And the thing I'm struggling with is how do we know what the warden or the parole board would do with a defendant sentenced from two to five? There has to be some date given to the inmate by which they will be considered for release, assuming that they have good behavior while they're in custody. Yes, Your Honor. And so for this point, I would point the court to the Shia decision, which is a Sixth Circuit decision, so understandably persuasive and not binding on this court. But the Shia decision is the most comprehensive decision when looking at this aggregate term as relates to withholding or removal. How does that spell? It's S-H-A-Y-A. It's 586 F. 3rd 401. It's a 2009 Sixth Circuit decision. In that case, what the court says is that when you're looking at an indeterminate sentence similar to what we have here, you need to look at one of two things, and that is the longest of either the minimum term that was imposed or the actual amount of time served in detention. In either of those two circumstances here, we have two years. But I thought the principle in immigration law was we look to the the alien actually served the full amount of the time. So that's correct, Your Honor. And I think what Your Honor is pointing to is the suspension of a sentence, which is clearly articulated in the INA at 101A. Well, I'm not sure it's a suspension. It's basically a minimal amount of time that an inmate has to serve before they are eligible for release. Some states call it parole. The feds call it supervised release. But the point is that there's some point in that continuum when the custodial authority is able to release the inmate earlier than the maximum sentence that was imposed. And I'm really struggling trying to figure out what Nevada law is on this point. Nevada law, I've looked into this and it's very unclear to me under Nevada law, to be perfectly honest. In looking at the Ramos-Mendoza case and the Spillers case that Your Honor points out, the Spillers case is reviewing a particular statute under Nevada law that no longer exists. So it's a little bit unclear as to- That was what was concerning to me, even if Ramos-Mendoza had any legs. Absolutely, Your Honor. So I'm reading from your brief under Shia. And of course, as you acknowledge, it's a Sixth Circuit case and it's a Michigan law. So it says, Michigan courts measure indeterminate sentences by the minimum sentence or the term actually served by the defendant. And from what you're telling us, my understanding is that we don't know if we were to substitute Nevada into that sentence, whether that's actually how Nevada treats it. That's correct, Your Honor. What I would say to that point is the Shia decision, the court there did comprehensively review that type of sentencing structure. And if we look at the, again, the purpose of the particularly serious crime bar, which is to prevent individuals from receiving humanitarian protection, if they're a danger to the community, then the best indication of that would be the actual time served by the individual from their criminal sentence here. That, in some ways, doesn't make sense to me because we're really looking at the time set, not where it ends up. And I realize Shia talks about the actual time served, but I'm not sure that we've incorporated that concept into maximum and minimums. Now, it may be, if it's two to five, that it could be two and therefore it's not at least five, that's one option. But if we were to look at time served, that seems that we would be looking behind the statute. So that's my concern, maybe to have a reaction to that. Yeah, I understand, Your Honor. The best point that I can make as to that is looking at the minimum amount imposed is the amount that that person would actually have to serve, the minimum amount of time that they're going to spend in detention imposed by the criminal sentencing court. But again, back to my point, that presumes that there's some determination made at two years that the inmate has served long enough and can be released. That's correct, Your Honor. Yes. From the parole board. It's essentially a parole decision. Right. Yeah. And there's nothing under the INA that clearly sort of indicates exactly what... Sounds to me it's not clear under Nevada law what that means. Right. That's correct, Your Honor. Can we take cognizance, or is it not part of this analysis, that as I look at the statistics, both in Nevada and generally, most people who receive these kinds of sentences don't serve the maximum. And so every judge who's imposing this sentence, type of sentence, recognizes that the likelihood that the person will ever serve the maximum is in the great majority of cases remote. So can't we look at what the overall judicial understanding is of these kinds of sentences, as opposed to as kind of a wooden look at, well, there is technically a maximum possible of five years? I believe so, Your Honor. And that's why the Shia decision, I think, is instructive in that sense, because it looks at the sentencing structure itself, as well as the actual time that ends up being... It doesn't look at actual time served. It looks at the sentence imposed. You're asking us, basically, to make a C change here, and I don't feel very comfortable doing that, since we don't have much authority to support that interpretation. Looking at the amount of time imposed as to actually served is only articulated clearly in the sentence definition as it relates to suspensions of sentences. Not the type of sentencing structure that we have here. So I don't think the INA clearly articulates what to do here. So I understand it's a bit of a wrestle for the court. And barring any further questions, I would submit on the briefs. Thank you. Thank you, Your Honors. Thank both counsel for the argument this morning. Monprier v. Garland is submitted.
judges: McKEOWN, TALLMAN, Rakoff